STATE of Missouri, Respondent,

v.

Leslie V. BOONE, Appellant.

Leslie V. BOONE, Appellant,

v.

STATE of Missouri, Respondent.

Nos. WD 45082, WD 47007.

Missouri Court of Appeals,
Western District.

Nov. 2, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 28, 1993.

Application to Transfer Denied
Feb. 22, 1994.

Susan L. Hogan, Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., F. Martin Dajani, Asst. Atty. Gen., Jefferson City, for respondent.

Before Ulrich, P.J., and BERREY and SMART, JJ.

SMART, Judge.

Leslie V. Boone appeals from the trial court's judgment finding him guilty of three counts of sodomy, in violation of § 566.060,

RSMo 1986, and one count of forcible rape, in violation of § 566.030, RSMo 1986. Defendant Boone was sentenced as a prior and persistent offender to thirty years imprisonment on each sodomy conviction and life imprisonment on the rape conviction. The sentences were ordered to run consecutively. Defendant also appeals the denial of his Rule 29.15 motion for post-conviction relief after an evidentiary hearing.

The judgment of conviction is affirmed in part, and vacated in part. The judgment denying the motion for post-conviction relief is affirmed.

Defendant Boone was originally charged with six counts of sexual abuse in the second degree, four counts of sodomy and one count of forcible rape. The state entered a nolle prosequi to all six counts of sexual abuse in the second degree and to one count of sodomy. The cause proceeded to trial on three counts of sodomy and one count of forcible rape.

In the summers of 1987 and 1989, defendant worked for his sister, Debra Carter,[1] in her day care service located in her home in Gladstone, Missouri. Ms. Carter and defendant took care of a large number of children, including Ms. Carter's children, Amy, Lisa and Shawna, and another child, Fara Smith.

On January 9, 1990, Fara Smith, who was thirteen years old at the time of trial, made a police report alleging that she had been sexually assaulted by defendant. Fara alleged that defendant touched her in her "private parts" while she was under his care. Fara made a statement to the police, which included a drawing made by Fara showing the body parts which were touched by defendant and identifying the locations where defendant assaulted her in the Carter home.

Amy Carter, who was five years old at the time of trial, told Gina Saunders, a therapist working with the Carter family, that defendant had touched her "private parts." Amy did not elaborate further on defendant's sexual abuse.

Lisa Carter, age 13 at the time of trial, also alleged that she was sexually assaulted by defendant. In August, 1989, Lisa alleged that defendant grabbed her, laid her on the bed, pulled down her shorts and started touching her "private parts." Defendant inserted his finger into Lisa's vagina. He also threatened Lisa not to tell anyone and that if she did he would kill her mother. Defendant attacked Lisa for a second time in August, 1989 while Lisa's parents were away. Defendant came into the bedroom and locked the door behind him and proceeded to rape Lisa. During this attack, Lisa yelled for help and her sister, Shawna, began pounding on the bedroom door, but was unable to get through the locked door. Defendant stopped assaulting Lisa when he heard Shawna at the door.

After defendant's arrest, he gave several voluntary statements to the police on separate occasions. In the first interview, he denied molesting the children in question. He then made the remark, "I guess I will be going back to the pen." In a later written statement, he admitted that he sexually abused children, and acknowledged that he had been molesting children for nineteen years. In a subsequent oral statement, he explained that his touching of the children was his way of saying he loved them. He further stated that most of the girls he touched wanted him to touch them, and that he did not force or coerce them. He made other statements which amounted to admissions that he touched the children for purposes of sexual gratification.

During trial, defendant denied all the allegations of sexual misconduct. Defendant claimed that he lied to police when he admitted that he had sexually abused the children. On cross-examination, when asked about his acknowledgment of having been a child molester for nineteen years, he stated that he could not recall that discussion. He was then impeached with a document he identified as a written statement he had signed, which contained this acknowledgement. At the conclusion of the trial, the jury returned guilty verdicts on all four counts charged

1. For purposes of this opinion, the names of the families of the alleged victims have been changed.

against defendant. The trial court entered judgment against defendant, from which he now appeals.

## *Verdict Directing Instruction No. 13*

First, defendant contends that the trial court clearly erred in submitting verdict directing instruction No. 13, patterned after MAI–CR3d 320.08.2 to the jury. Defendant alleges that the instruction was defective and that its submission violated his rights to due process of law, as guaranteed by the fifth, sixth and fourteenth amendments to the United States Constitution, and by Article I, § 10 of the Missouri Constitution, resulting in a manifest injustice. The State concedes that the verdict directing instruction was defective in that the actions of defendant submitted to the jury (the alleged touching of the anus of Fara Smith by defendant) did not violate § 566.060, RSMo 1986. Thus, the conviction and sentence as to Count III is reversed and the case is remanded with instructions to the trial court to correct the judgment and sentence accordingly.

## *Defendant's Statements*

Defendant alleges that the trial court erred in allowing the State to introduce statements made by defendant during the trial, alluding to defendant's prior incarceration, and statements made by defendant indicating uncharged sexual acts. Defendant claims the testimony was irrelevant, inadmissible and so prejudicial as to violate defendant's rights to be tried only for the charged offenses and to a fair trial, as guaranteed by the fifth, sixth and fourteenth amendments to the United States Constitution and Article I, §§ 10 and 18(a) of the Missouri Constitution. Defendant alleges that the testimony was inadmissible under any exception to the rule prohibiting evidence of other crimes, was not legally relevant because any probative value was outweighed by its highly prejudicial effect, and the evidence was introduced solely for the improper purpose of attempting to show defendant's bad character and propensity to commit the charged offenses.

A trial court has broad discretion in ruling on questions of relevance and its decision will be overturned only upon a finding of a clear abuse of that discretion. *State v. Driscoll,* 711 S.W.2d 512, 516 (Mo. banc 1986), *cert. denied,* 479 U.S. 922, 107 S.Ct. 329, 93 L.Ed.2d 301 (1986). Generally, evidence of prior crimes is inadmissible, unless it has a legitimate tendency to prove the crimes charged. *State v. Shaw,* 636 S.W.2d 667, 671–72 (Mo. banc 1982); *cert. denied,* 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982). Evidence of other crimes has a legitimate tendency to prove the crime or crimes charged when it tends to establish: motive, intent, absence of mistake or accident, a common scheme or plan, or identity. *State v. Bernard,* 849 S.W.2d 10, 13 (Mo. banc 1993). However, such evidence may still be admissible if it is logically relevant (the evidence has some legitimate tendency to establish directly the defendant's guilt of the charged offenses) and legally relevant (its probative value outweighs its prejudicial effect). *Id.* The test utilized to determine whether evidence is logically relevant is whether "it logically tends to prove or disprove a fact in issue or to corroborate evidence which itself is relevant and bears on the principal issue." *Id.* Evidence may be excluded as irrelevant only if it is shown to be so beyond doubt. *State v. O'Neal,* 718 S.W.2d 498, 503 (Mo. banc 1986), *cert. denied,* 480 U.S. 926, 107 S.Ct. 1388, 94 L.Ed.2d 702 (1987).

Defendant argues that evidence of his prior incarceration and evidence of other sexual acts fails to fit into any exception to the general prohibition of presenting evidence of other crimes. The evidence of the prior incarceration and other sexual acts was legally and logically relevant and its probative value outweighed its prejudicial effect. Thus, the evidence of prior incarceration, elicited through testimony, and evidence of alleged prior sexual offenses, elicited through testimony and mentioned during closing arguments, was properly admitted as discussed below.

## *Evidence of Prior Incarceration*

After defendant had been given his "miranda warning," he agreed to talk to Officer Viles. Officer Viles explained to defendant what allegations had been lodged against him and defendant denied any allegations of mo-

lestation. He made an additional unsolicited comment to Officer Viles, "I guess I'll be going back to the pen." Defense counsel objected to the testimony as improper evidence of prior crimes. In seeking to overcome the objection, the prosecution first suggested that the statement was "an admission as to his past record." Then, in a further effort to justify admission of this remark, the prosecutor stated, "It's an admission of guilt on his part." The trial court overruled defendant's objection.

■ Defendant is correct in his assertion that evidence of prior incarceration is evidence of other crimes. *State v. Johnson,* 753 S.W.2d 576, 579 (Mo.App.1988). However, defendant's statement to Officer Viles had a legitimate tendency to directly establish defendant's guilt of the charged crimes by showing consciousness of guilt and expectation of conviction. Additionally, because the comment was an admission of consciousness of guilt of the present crimes, the evidence was highly probative, which outweighed any prejudicial effect it may have had. It was not a bare reference to defendant's prior incarceration which made his comment probative of his guilt. Instead, it was the manner in which the comment was phrased in response to the allegations, "I guess I'll be going back to the pen," as an expectation of being convicted of the current crimes, which made the testimony probative of defendant's guilt. *See State v. Perkins,* 680 S.W.2d 331, 333–34 (Mo.App.1984) (where the court allowed a witness to testify that defendant said, "[d]on't call the police ... [t]here [sic] just going to send me back," as admissible to show intent and absence of mistake or accident, as well as admissible under the "complete story" exception). Thus, the trial court did not err in overruling defendant's objection and allowing the testimony to be admitted into evidence.

*Evidence of Uncharged Sexual Acts*

■ Defendant claims that Officer Viles also testified about similar sex crimes evidence over defendant's objections. The pertinent testimony is as follows:

Prosecutor: When you spoke with Mr. Boone on January 17, 1990, did you speak with him about why he touched the children involved?

Officer Viles: Yes I did.

Prosecutor: And what was his explanation?

Officer Viles: He said that touching children was his form of saying he loved them.

Prosecutor: Okay. Did Mr. Boone tell you that there was any force or threat involved?

Officer Viles: He said that most of the girls that he touched wanted him to do that, and he didn't have to force them or coerce them, and he felt comfortable with them.

Defendant claims that this testimony constituted evidence of prior uncharged sexual conduct not offered to establish any of the recognized exceptions. To violate the rule against prior crimes evidence, the evidence must show that the defendant has committed, been accused of, been convicted of, or definitely associated with, another crime or crimes. *State v. Hornbuckle,* 769 S.W.2d 89, 96 (Mo. banc 1989) *cert. denied,* 493 U.S. 860, 110 S.Ct. 171, 107 L.Ed.2d 128 (1989). Officer Viles testimony regarding defendant's statement was not introduced to connect defendant with past crimes. While the reference to "most of the girls that he touched" could be understood as possibly referring to more than the three girls involved in these charges, the statement, in context, was clearly related to the current charges. It is unclear how many incidents of molestation were referred to by defendant. It is clear, however, he was at least including the girls he was charged with molesting in this case. This evidence was logically relevant and highly probative of guilt. The probative value outweighed the prejudicial effect. Therefore, the trial court did not err in admitting the testimony into evidence.

*Cross-examination of Defendant*

Defendant also contends that the trial court erred in overruling his objections to some of the questions asked by the State during its cross-examination of defendant. Defendant chose to testify during the presen-

tation of his evidence. On direct examination, defendant made a blanket denial of the charges against him. Defendant admitted making a statement to police that he had sexually molested Amy, Lisa and Fara, but testified that he had lied in making the statement in order to be able to obtain pop and cigarettes from the police. On cross-examination, the State questioned defendant about other statements defendant had made to the police acknowledging that he was "a child molester." The State argues that such questioning was not improper since defendant "opened the door" when he denied all of the allegations.

■ Certainly a defendant who decides to testify on his own behalf may be impeached as any other witness. *State v. Murphy*, 592 S.W.2d 727, 731 (Mo. banc 1979). On cross-examination, the State may examine a defendant in detail as to matters only generally referred to in the direct examination. *Id.* The trial court has broad discretion in its control of cross-examination. *State v. Leisure*, 749 S.W.2d 366, 378 (Mo. banc 1988) *cert. denied,* — U.S. —, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992).

■ During cross-examination, defendant was asked if he recalled statements that he made to police to the effect that he was a child molester and had been molesting children for nineteen years. Because defendant denied the truth of his statement admitting molestation of Amy, Lisa and Fara, and asserted that he had made such a statement in order to be able to obtain pop and cigarettes, the prosecution was entitled to challenge the reasonableness of this assertion, and to inquire into the specifics of other statements acknowledging acts of molestation. The questioning did not go into detail about any alleged prior bad acts or uncharged crimes, but rather concentrated on the statements that he made to the police. The trial court did not abuse its discretion in allowing the cross-examination.

Defendant further complains about a question asked by the prosecutor concerning whether he recalled talking to Officer Viles and telling Officer Viles that Officer Viles "knew what child molesters looked like." Defendant's objection to the question was sustained. Defendant now complains that a "curative instruction" should have been given to the jury to disregard the question. However, no such instruction was requested. Defendant offers no authority for the proposition that the court had a duty *sua sponte* to instruct the jury to disregard the question. Nor does defendant explain why the question was improper.

■ Last, defendant complains about comments made by the prosecutor during closing arguments in which he repeated defendant's pre-trial statements about being a child molester for nineteen years and his admission of being a "sexual molester." Defendant has not preserved this point for appeal. Defendant did not object to the comments. Generally, it is improper to argue that the defendant is a child molester and therefore he must have molested these children. *State v. Bernard,* 849 S.W.2d 10 (Mo. banc 1993); *State v. Courter,* 793 S.W.2d 386 (Mo.App.1990). In this case, however, where the statement of the defendant was properly in evidence, it was not improper for the prosecutor to use it in argument.

## *Defendant's Motion to Dismiss Trial Counsel*

Next, defendant contends that the trial court plainly erred in overruling defendant's motion to dismiss his attorney and to represent himself at trial. Defendant claims that the court's ruling denied defendant's right to self-representation, as guaranteed by the sixth and fourteenth amendments to the United States Constitution, and by Article I, § 10 of the Missouri Constitution. Defendant suggests that the record clearly reflects that he desired to dismiss his appointed counsel, that he made an informed request to waive his right to counsel and that his request would not have unduly impinged on the administration of justice or the access of other defendants to the courts.

■ Defendant failed to preserve this point of error for appellate review by not including it in his motion for new trial. Defendant requests that this court review the allegation for plain error. In order to prevail on a claim of plain error, defendant must

show that if the error is left uncorrected, a "manifest injustice or miscarriage of justice inexorably results." Rule 84.13(c); *State v. Valentine*, 646 S.W.2d 729, 731 (Mo.1983).

It is well established that a defendant in a criminal trial is entitled to be represented by counsel at trial. *State v. Watson*, 716 S.W.2d 398, 402 (Mo.App.1986). A defendant has an equally protected right to represent himself or herself at trial. *Faretta v. California*, 422 U.S. 806, 835–36, 95 S.Ct. 2525, 2541–42, 45 L.Ed.2d 562 (1975). However, the right to self-representation is not unconditional. *State v. Herron*, 736 S.W.2d 447, 449 (Mo.App.1987). For a defendant to effectively waive his right to counsel and proceed *pro se,* there must be a showing that (1) defendant is competent to make an intelligent waiver of counsel, *State v. Williams,* 716 S.W.2d 452, 453 (Mo.App.1986); and (2) defendant's request is timely and unequivocal. *Richardson v. State,* 773 S.W.2d 858, 860 (Mo.App.1989).

We elect not to review this alleged error as plain error under Rule 84.13(c). The fact that it was not included as an allegation of error in the motion for new trial suggests that defendant was not really convinced he was disadvantaged by not being able to represent himself. It is extremely unusual for any defendant to be able to do a decent job of representing himself or herself in a criminal trial. Moreover, this defendant's lack of adroitness in giving his own testimony indicates that defendant lacks ability as an advocate. Point III is denied.

### Closing Arguments

Defendant also contends that the trial court plainly erred in failing to declare a mistrial *sua sponte* during the prosecutor's closing argument. Defendant claims that the prosecutor argued the necessity of deterring defendant from committing future crimes. As a result of this argument, defendant claims he was denied his right to due process of law and his right to a fair trial, in violation of the fifth, sixth, and fourteenth amendments to the United States Constitution and Article I, §§ 10 and 18(a) of the Missouri Constitution. Defendant failed to preserve this point of error for appellate review by failing to object during closing argument and by not including it in his motion for new trial. Nevertheless, we will review the allegation for plain error. In order to prevail on a claim of plain error, Defendant must show that if the error is left uncorrected, a "manifest injustice or miscarriage of justice inexorably results." Rule 84.13(c); *State v. Valentine,* 646 S.W.2d 729, 731 (Mo.1983).

During closing argument, the prosecutor engaged in the following commentary:

> *Let's put an end to this, stop it.* Tell him when you decide to do something like this in Clay County, prepare to be convicted. We don't like it, we don't tolerate it, and when there's evidence and the state proves this case, you're going to get convicted.

Defendant is correct in his assertion that, where a jury is deliberating on the issue of guilt, the prosecution is generally prohibited from arguing for a harsh sentence in order to deter the defendant on trial from committing future crimes. *See State v. Antwine,* 743 S.W.2d 51, 71 (Mo. banc 1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). However, a prosecutor may argue for a severe penalty to deter others. *Id.* Also, a prosecutor may clearly seek a conviction upon the evidence of the case and ask the jury to "send a message" that when the state has proven its case as to the defendant's guilt, jurors will convict. The prosecutor's statements were not directed to defendant's future conduct. Reading the remarks in the context of the entire closing argument, it is clear that the prosecutor was not arguing that the jury should deter this defendant from committing future crimes. Instead, the prosecutor was suggesting that the jury send a message to other child molesters that their conduct will not go unpunished. We find no error in the prosecutor's remarks. Point IV is denied.

### Ineffective Assistance of Counsel

Defendant argues that the hearing court plainly erred in denying his Rule 29.15 motion for post-conviction relief because he was denied his right to effective assistance of counsel, as guaranteed by the sixth and four-

teenth amendments to the United States Constitution and by Article I, § 18(a) of the Missouri Constitution. Defendant suggests that defense counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under the same or similar circumstances by failing to request leave from the trial court to renumber the remaining counts upon which he was tried, after the state dismissed several counts prior to trial, and by engaging in overly expansive cross-examination of state witnesses, thereby allowing the state to inquire on redirect as to other uncharged crimes allegedly committed by defendant.

Appellate review of the denial of a Rule 29.15 motion is confined to the issue of whether the findings of fact and conclusions of law of the motion court are clearly erroneous. *State v. Anderson,* 785 S.W.2d 596, 600 (Mo.App.1990). The motion court's determination is clearly erroneous only if after reviewing the entire record, the appellate court has a definite and firm impression that a mistake has been made. *Id.*

To establish ineffective assistance of counsel, defendant must satisfy the *Strickland* two-prong test, showing (1) counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under substantially similar circumstances, and (2) that defendant was thereby prejudiced. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Review begins with the presumption that counsel is competent and movant has the "heavy burden" of proving counsel's ineffectiveness by a preponderance of the evidence. *Amrine v. State,* 785 S.W.2d 531, 534 (Mo. banc), *cert. denied,* 498 U.S. 881, 111 S.Ct. 227, 112 L.Ed.2d 181 (1990). Finally, appellant must show that a different outcome would have resulted but for counsel's errors in order to show that he was prejudiced by such errors. *Sanders v. State,* 738 S.W.2d 856, 860–61 (Mo. banc 1987).

Defendant concedes that he failed to produce evidence regarding these two alleged points of error at his evidentiary hearing on his Rule 29.15 motion. Defendant raised three issues at the hearing: failure to request a speedy trial, failure to take depositions of key witnesses of the state, and alleged prosecutorial misconduct. Thus, the record in the instant case is devoid of any evidence of defendant's claims that his attorney engaged in overly expansive cross-examination or that the failure of his attorney to renumber the counts allowed the jury to infer other crimes.

Allegations in a post-conviction motion are not self-proving and movant bears the burden of proving grounds for relief by a preponderance of the evidence. *Malady v. State,* 762 S.W.2d 442, 443 (Mo.App.1988). Failure to present evidence on an ineffective assistance of counsel claim constitutes abandonment of that claim. *Id.* A hearing court is not clearly erroneous in refusing to grant relief on an issue which is not supported by evidence at the evidentiary hearing. *Taylor v. State,* 803 S.W.2d 117, 119 (Mo.App.1990). This court denies defendant's request to review these allegations for plain error. We see nothing which causes us to believe defendant did not receive a fair trial. Point V is denied.

### Conclusion

The conviction and sentence as to Count III (as to which the state has confessed error) is reversed. The judgment of convictions is otherwise affirmed. The judgment denying the motion for post-conviction relief is affirmed. The case is remanded to the trial court to correct the judgment and sentence accordingly.

All concur.