

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

CHAUNCY TAYLOR,

    Movant/Appellant,

vs.

STATE OF MISSOURI,

    Respondent.

)
)
)
)
)
)
)
)
)
)

No. ED109692

Appeal from the Circuit Court
of the City of St. Louis
1922-CC111484

Honorable David L. Dowd

FILED: August 16, 2022

## Introduction

Chauncy Taylor (Movant) appeals from the motion court's Findings of Fact, Conclusions of Law and Order denying his Rule 29.15[1] post-conviction motion to vacate, set aside, or correct the judgment or sentence after an evidentiary hearing. Movant argues the denial of his motion was clearly erroneous because he proved by a preponderance of the evidence that his counsel was ineffective for failing to adduce evidence that the victim's father had brought the victim to the Children's Advocacy Center for a forensic interview, to Movant's prejudice. Finding no clear error, we affirm.

## Factual and Procedural Background

Movant seeks post-conviction relief from his conviction and sentence for first-degree statutory sodomy and first-degree child molestation, stemming from two separate incidents in

---

[1] All rule references are to the Missouri Supreme Court Rules (2019).

which he assaulted his then-girlfriend's child, K.F. (Victim), when she was between the ages of eight and twelve years old.[2]

*Trial and sentencing*

The evidence adduced at trial, viewed in the light most favorable to the verdict, is as follows.

Movant was the then-boyfriend of Victim's mother (Mother) and was the father of Victim's youngest brother. For a period of a few years, including between 2011 and 2015, Movant sporadically lived with Mother, Victim, and Victim's siblings. Movant would occasionally watch Victim and her younger siblings when Mother was at work.

In February 2015, at the end of a school day, Victim approached her teacher, "panicked" and "very upset," and said she did not want to go home. Victim relayed that "someone had touched her inappropriately and she was afraid it was going to happen again and that she didn't want to leave." The teacher escorted Victim to the school counselor's office, where Victim confided that "her mom's boyfriend was doing inappropriate things to her." Victim explained that, the day before, Movant had put his penis inside Victim's mouth, attempted to put his penis inside her vagina, and threatened to kill her and one of her brothers with a knife. Victim also divulged to the school counselor that this was not the first incident of Movant inappropriately touching her.

Investigating detectives scheduled a time for Victim to visit the Child Advocacy Center (CAC). When Victim first went to the CAC, she was "freaking out" and was unable to be

---

[2] The State originally charged Movant with 24 counts related to three separate incidents of alleged assault. The State later filed a memorandum of *nolle prosequi* for twelve counts of armed criminal action, and proceeded to trial only on the twelve remaining counts: two counts of first-degree rape or attempted rape, two counts of first-degree statutory rape or attempted statutory rape, three counts of first-degree sodomy and forcible sodomy, three counts of first-degree statutory sodomy, one count of first-degree sexual abuse, and one count of first-degree child molestation.

interviewed. Mother was resistant to making a second appointment and Victim did not appear for the rescheduled interview. Eventually, in April 2015, Victim was interviewed by Mr. Anthony Harper at the CAC. A video of the forensic interview was admitted and published for the jury.

During her trial testimony and during the interview, Victim described the February 2015 incident. In addition to what she told her school counselor, Victim added that during that incident Movant put his mouth on her breast. Victim also described an incident that occurred sometime between October 2011 and 2013, in which Movant coerced Victim into putting her mouth on his penis by threatening to beat her with an extension cord if she did not comply. Victim detailed a third incident, in December 2014, in which Movant attempted to put his penis in Victim's vagina after threatening Victim with a knife.

Mother testified that, on the night of the October 2011-2013 incident when Mother went to check on her sleeping children, she noticed Victim was not in her bed and the living room light was on. Mother found Victim in the living room and Victim said she was cleaning, which Mother described as "very odd." The morning after that incident, Victim confided in Mother what had occurred the previous night. Mother confronted Movant later that evening and told him to leave the house. After a few weeks, Movant returned and occasionally stayed at the house.

The defense theory presented at trial was two-fold: first, that Movant was out of town on the dates of the alleged December 2014 incident; and second, that Movant's role in Victim's father being kicked out of the house in January 2015 influenced Victim to falsely accuse Movant of assault.

After six hours of deliberation, a jury found Movant guilty of one count of first-degree statutory sodomy based on placing his penis in Victim's mouth between October 2011 and October 2013, and one count of first-degree child molestation based on placing his mouth on

3

Victim's breast in February 2015. The jury acquitted Movant on the remaining ten counts. The trial court sentenced Movant as a prior and persistent offender[3] to concurrent sentences of 30 years for statutory sodomy and 15 years for child molestation, for a total of 30 years in the Missouri Department of Corrections. This Court affirmed the judgment of conviction and sentence on direct appeal. State v. Taylor, 577 S.W.3d 178 (Mo. App. E.D. 2019).

### Post-conviction proceedings

Movant timely filed a *pro se* post-conviction motion under Rule 29.15 to vacate, set aside, or correct the judgment or sentence. After her appointment, Movant's post-conviction counsel was granted an additional 30 days to file an amended motion, making the motion due in February 2020.[4] An amended motion was not filed until May 4, 2020. With this amended motion, post-conviction counsel asked the court to excuse the untimely filing pursuant to Sanders v. State, 807 S.W.2d 493 (Mo. banc 1991). The motion court found that Movant had been abandoned by post-conviction counsel and proceeded to consider the claims raised in the amended motion. See id. at 495.

In the amended motion, Movant alleged that his trial counsel (Trial Counsel) was ineffective for failing "to adduce evidence, through the testimony of [Victim], Anthony Harper, or other witness[es], that Sanquel Ford, [Victim's] father, brought her to the Children's Advocacy Center ("CAC") for her forensic interview."[5] Movant argued that, had this evidence

---

[3] See section 588.016, RSMo. 2009.

[4] Under the applicable version of Rule 29.15, appointed counsel had 90 days after her November 6, 2019 appointment to file the amended motion, including one 30-day extension granted by the motion court. See Rule 29.15(g).

[5] The amended motion also alleged that Movant's appellate counsel was ineffective for failing to raise on direct appeal the claim that the trial court erred in allowing specific testimony from Anthony Harper, the individual who conducted Victim's forensic interview; and that Trial Counsel was ineffective for failing to object to the State's questions to Movant regarding the veracity of other witnesses' testimony and for failing to object to testimony that acid phosphatase is a component of seminal fluid. We confine our analysis to the argument presented on appeal and do not discuss these other claims.

been presented, there is a reasonable probability that the jury would have found Movant not guilty on all charges.

The motion court judge, who was the same judge who presided over Movant's trial and sentencing, held an evidentiary hearing on the Rule 29.15 motion. Movant testified by deposition and Trial Counsel testified in person at the hearing.[6] As relevant here, Movant testified that one of the arguments advanced in his defense was that Victim was being influenced by Ford to falsely accuse Movant. Movant confirmed he "was aware that there was some evidence, in the discovery … that Sanquel Ford actually brought [Victim] to the Children's Advocacy Center" and that he wanted Trial Counsel to adduce that evidence to show Ford's influence over Victim. Trial Counsel testified he reviewed the summary that accompanied the CAC interview, which indicated that Ford brought Victim to her interview. Trial Counsel admitted he did not present this evidence at trial and stated that "[i]t was probably just oversight on [his] part."

After the hearing, the motion court denied all claims in Movant's amended motion. In denying the claim at issue, the motion court explained that Movant presented no evidence that any witness's testimony that Ford drove Victim to the CAC would have supported a viable defense, and therefore the court could not find Trial Counsel's "strategy was unreasonable based on the evidence in the case." This appeal follows.[7]

Standard of Review

Appellate courts review the denial of a Rule 29.15 motion for whether the motion court's findings and conclusions are "clearly erroneous." Rule 29.15(k); Shockley v. State, 579 S.W.3d 881, 892 (Mo. banc 2019). Findings and conclusions are clearly erroneous when a review of the

---

[6] Movant's appellate counsel also testified in person at the evidentiary hearing.
[7] Additional facts relevant to Movant's claim will be set forth, as needed, in the discussion of Movant's point on appeal.

5

record leaves the court with "the definite and firm impression that a mistake has been made." Shockley v. State, 579 S.W.3d at 892, quoting Swallow v. State, 398 S.W.3d 1, 3 (Mo. banc 2013). "The motion court's findings are presumed correct." Id. An appellate court may affirm the judgment on any legal ground supported by the record. Swallow, 398 S.W.3d at 3.

## Point I

In his sole point on appeal, Movant argues the motion court clearly erred in denying his amended motion because he established by a preponderance of the evidence that he received ineffective assistance of counsel and was prejudiced. According to Movant, Trial Counsel was ineffective for failing to adduce evidence that Victim's father brought her to the CAC for a forensic interview and that, had this evidence been presented to the jury, there is a reasonable probability the outcome of trial would have been different. We disagree.

*Law governing ineffective assistance of counsel claims*

When a post-conviction claim is grounded in alleged ineffective assistance of counsel, a movant must show that counsel failed to meet the two-prong test announced in Strickland v. Washington, 466 U.S. 668 (1984). Shockley, 579 S.W.3d at 892. Under Strickland, a movant must show: (1) counsel's performance was deficient in that counsel failed to exercise the level of skill, care, and diligence that reasonably competent counsel would exercise in a similar situation; and (2) movant was prejudiced by that failure. Id.; Strickland, 466 U.S. at 687. A movant arguing for post-conviction relief bears the burden of proving both deficient performance and prejudice by a preponderance of the evidence. Shockley, 579 S.W.3d at 892.

*Movant failed to carry his burden of proving his claim of ineffective assistance of counsel by a preponderance of the evidence*

In his amended motion, Movant alleged that Trial Counsel was ineffective for failing "to adduce evidence, through the testimony of [Victim], Anthony Harper, or other witness[es], that

6

Sanquel Ford, [Victim's] father, brought her to the Children's Advocacy Center ("CAC") for her forensic interview."

To succeed on a claim of ineffective assistance of counsel for failing to elicit specific testimony, a movant must show that: (1) trial counsel knew or should have known of the witness's existence, (2) the witness could be located through reasonable investigation, (3) the witness would testify at trial, and (4) that testimony would have produced a viable defense. Id. at 906. Here, both Victim and Harper testified at trial. There is no issue, therefore, that their existence was known, that they could be located, or that they would testify at trial. The only issue before the motion court was whether their testimony would have produced a viable defense.

Movant failed to carry his burden to prove the testimony would have produced a viable defense because he failed to adduce any evidence at the evidentiary hearing as to what witness testimony he would have introduced at trial. A movant bears the burden of proving the claim(s) for relief by a preponderance of the evidence. Id. at 892; Rule 29.15(i). To prove ineffective assistance of counsel based on the failure to present a witness, "a movant is required to show what the evidence would have been if the witness had been called." Shockley, 579 S.W.3d at 906–07. "Mere speculation concerning the content of a witness'[s] testimony is insufficient." State v. McRoberts, 837 S.W.2d 15, 22 (Mo. App. E.D. 1992), citing Canterbury v. State, 781 S.W.2d 107, 110 (Mo. App. W.D. 1989).

No potential witnesses testified at the evidentiary hearing, and neither Movant nor Trial Counsel was questioned regarding any witness testimony. By failing to produce any witnesses at the evidentiary hearing, Movant failed to prove the allegation in his amended motion that Trial Counsel was ineffective for failing to adduce witness testimony that Ford brought Victim to the CAC for her forensic interview. Further, beyond the allegations in Movant's amended motion

7

relating to witness testimony, Movant failed to present any admissible documentary evidence at the evidentiary hearing establishing that Ford brought Victim to the CAC; namely, Movant did not submit into evidence the CAC summary, which allegedly showed that Ford drove Victim to her forensic interview. Movant likewise failed to introduce any testimony from Trial Counsel as to how Trial Counsel would have admitted this summary at trial.

Movant's failure to introduce sufficient supporting evidence at the evidentiary hearing is fatal to his post-conviction claim. See Stewart v. State, 640 S.W.3d 820, 825 (Mo. App. S.D. 2022) (affirming denial of claim of ineffective assistance of counsel for failing to call witness because movant "did not submit any evidence demonstrating that [witness] could be located, that she would testify, or that her testimony would have produced a viable defense," where witness did not appear or testify at evidentiary hearing); State v. Dees, 916 S.W.2d 287, 302 (Mo. App. W.D. 1995) (affirming denial of claim of ineffective assistance of counsel for failure to call witness because "there [was] no direct evidence as to what, if anything, [witness] would have testified to at trial," where witness was not called to testify at evidentiary hearing).

Because Movant failed to present sufficient evidence at the evidentiary hearing, the motion court did not clearly err in denying his post-conviction claim. See Cole v. State, 223 S.W.3d 927, 932 (Mo. App. S.D. 2007) ("A hearing court is not clearly erroneous in refusing to grant relief on an issue which is not supported by evidence at the evidentiary hearing," quoting State v. Boone, 869 S.W.2d 70, 78 (Mo. App. W.D. 1993)).

*Movant failed to demonstrate he was prejudiced by his trial counsel's failure to adduce evidence that Victim's father drove her to the Child Advocacy Center for her forensic interview*

Moreover, even had Movant adduced sufficient evidence at the evidentiary hearing to support his claim of Trial Counsel's deficient performance, Movant failed to establish that any prejudice resulted.

8

To establish prejudice, a movant must show there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. Shockley, 579 S.W.3d at 892. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Movant has failed to show he was prejudiced by any failure to present evidence that Ford took Victim to the CAC for her forensic interview. Movant's post-conviction argument is premised on the theory that Victim fabricated her allegations against Movant because of her anger at Movant for his role in Ford's removal from Mother's house, or alternatively that Ford pressured Victim to fabricate her allegations against Movant. Although Movant argues that the fact that Victim "was driven by Mr. Ford to an interview that she had previously tried to avoid attending strongly supports an inference that Mr. Ford influenced her to tell the CAC interviewer that [Movant] abused her," we are not persuaded that this fact would have changed the outcome of trial.

Most importantly, the fact that Ford drove Victim to the CAC has no impact on Victim's and Mother's disclosures about the October 2011-2013 incident, for which Movant was convicted of statutory sodomy. Victim and Mother both testified that Victim told Mother about this incident the day after it happened, which was at least a year before Ford's January 2015 removal from Mother's house. Even under Movant's theory—that Victim fabricated all the allegations against him due to her anger at Movant for his role in having Ford removed—Victim had no motive to fabricate any allegations prior to January 2015. As such, any evidence that purportedly supports this defense theory, such as Ford bringing Victim to the CAC, has no effect on testimony regarding the October 2011-2013 incident.

9

In addition, Trial Counsel effectively asserted this theory of defense throughout trial and we are not convinced that adducing the simple fact that Ford drove Victim to the CAC interview, without more, would have created a reasonable probability of a different outcome. Trial Counsel highlighted the contentious relationship between Movant and Ford, including that Ford wanted Movant out of Mother's life and that Movant played a role in having Ford removed from Mother's house. Trial Counsel also emphasized that Victim was upset about Ford leaving the house and that Victim's behavior toward Movant changed thereafter. This theory of defense also featured in the State's cross-examination of Movant, including the following questions:

Q [State]: "And [Victim is] lying [about the allegations] because [Ford] got kicked out of the house, is that what you're telling us?"

A [Movant]: "Yes, sir."

Q: "And [Victim] did that because you wanted [Ford] out of the house in January of 2015?"

A: "Yes, sir."

We are not convinced that the mere fact that Ford drove Victim to the CAC would have meaningfully bolstered this theory of defense so as to sway the jury to a different outcome.

For these reasons, we conclude that, even had Trial Counsel called a witness to testify that Ford brought Victim to the CAC for her forensic interview, Movant failed to demonstrate a reasonable probability that the outcome of trial would have been different. See Hook v. State, 611 S.W.3d 842, 859 (Mo. App. W.D. 2020) (movant failed to show prejudice from failure to offer expert testimony regarding forensic interview techniques, where nothing in expert testimony would have impacted jury's consideration of consistent previous disclosures of alleged

10

abuse and where defense counsel highlighted concerning aspects of forensic interview through other cross-examination and in closing argument).

Having reviewed the record, we are not left with a definite and firm impression that a mistake has been made.  Movant has failed to show the motion court's findings and conclusions on this issue were clearly erroneous.

Point I is denied.

Conclusion

For the foregoing reasons, we affirm the motion court's denial of Movant's amended Rule 29.15 motion.

_____
SHERRI B. SULLIVAN, J.

Angela T. Quigless, P.J., and
Robert M. Clayton III, J., concur.